[31 NYS3d 494]

COWEN AND COMPANY, LLC, Respondent, v FISERV, INC., Appellant.

First Department, May 17, 2016

**APPEARANCES OF COUNSEL**

*Bryan Cave LLP*, New York City (*Erick Rieder* and *Scott H. Kaiser* of counsel), for appellant.

*Herbert Smith Freehills New York LLP*, New York City (*Scott S. Balber, Emily Abrahams* and *Justin A. Schenck* of counsel), for respondent.

**OPINION OF THE COURT**

Manzanet-Daniels, J.

Plaintiff, an investment bank, was retained by defendant to provide financial advisory services in connection with defendant's potential acquisition of another company. On October 6, 2010, the parties entered into an engagement letter pursuant to which plaintiff was "engaged to act as lead financial advisor to [defendant] in connection with a proposed Transaction . . . involving the possible acquisition or other business combination by [defendant] or an affiliate thereof or with CashEdge Inc. (The 'Target')." Defendant agreed to pay plaintiff a "Transaction Fee" and to reimburse it for reasonable expenses. Defendant also agreed to pay a "Break-Up Fee" in the event of a failed transaction.

The parties did not define the "Transaction Fee" by a dollar amount or percentage value. Instead, they agreed to a provision which referenced "investment banking industry practice" for comparable transactions. The provision required the parties to "work in good faith to determine the amount of the Transaction Fee" to be paid to plaintiff "after reviewing additional

information" about the potential transaction, and they "agree[d] that such Transaction Fee shall be consistent with investment banking industry practice for transactions of comparable complexity, level of analysis and size."

By November 2010, the parameters of a potential acquisition of CashEdge by defendant were becoming clear. Matthew Epstein, of plaintiff, and Jim Cox, of defendant, were in regular communication concerning the terms of the deal. Plaintiff assisted in the preparation of proposals to CashEdge, including valuation analyses, projections and revisions.

On November 6, 2010, defendant made an initial offer to acquire CashEdge at total consideration of up to $425 million, which was rejected. Plaintiff thereafter assisted defendant in drafting an indication of interest letter more specifically describing the purchase price and structure for the potential acquisition. The indication of interest, submitted to CashEdge on December 20, 2010, proposed that defendant "pay total consideration of up to $450 million" to acquire CashEdge.

The parties' principals began to discuss the transaction fee payable pursuant to the agreement. Epstein proposed a fee equal to 1% of the value of the potential transaction. He sent Cox surveys of "M&A Acquiror Advisor Fees" and "M&A Target Advisor Fees" sourced by a Thomson Reuters entity. These surveys, referred to as "fee runs," reflect publicly-reported investment banking fees for comparable transactions. The surveys reflected a mean fee of .95 of one percent for deals valued between $300 and $500 million. Witnesses confirmed that the use of these surveys is standard practice for investment banks and their clients. Kevin Raidy, a 24-year veteran of the investment banking industry, testified that fee runs "are the data sources that both purveyor and consumers of financial—the financial advisory services rely upon as the basis for such fees." David Stowell, a professor of finance at Northwestern University's Kellogg School of Management, opined that use of the Thomson Reuters survey is standard practice in the calculation of investment banking fees. He further opined that it was standard practice to determine the fee at some time after an engagement letter had been signed, noting that the structure, size and complexity of a transaction are often not clear at the time the letter is signed.

The indication of interest was not signed, and negotiations stalled in or around February 2011. Defendant thereafter resumed negotiations with CashEdge, and on May 25, 2011

engaged another investment bank to complete the acquisition. On September 14, 2011, the deal closed.

After learning of the acquisition, plaintiff tendered an invoice to defendant reflecting a transaction fee in the amount of $4,650,000 (i.e., 1% of the CashEdge acquisition price) plus out-of-pocket expenses. The invoice was accompanied by the Thomson Reuters survey. Defendant maintained that plaintiff was not entitled to compensation for a transaction in which it had not been involved. Cox sent a letter to plaintiff claiming that plaintiff "withdrew" from the engagement in December 2010 after the contemplated transaction had been "abandoned." It is undisputed that the agreement was never terminated by either party upon 10 days notice, as required by the agreement.

This litigation ensued. The motion court denied defendant's motion for summary judgment after oral argument, finding an issue of fact as to whether the 1% fee plaintiff requested was supported by the industry practice of conducting fee runs.

We agree and now affirm. The doctrine of definiteness "assures that courts will not impose contractual obligations when the parties did not intend to conclude a binding agreement" (*Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 482 [1989], *cert denied* 498 US 816 [1990]). It is to be sparingly used, as a "last resort," and only when an agreement "cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear" (*id.* at 483). The Court of Appeals has cautioned that if applied with too "heavy [a] hand," the doctrine may negate the reasonable expectations of the parties in entering into the contract (*id.*).

The "Transaction Fee" provision explicitly references the type of "commercial practice, or trade usage" New York courts routinely rely upon to render a price term sufficiently definite (*see e.g. Basu v Alphabet Mgt. LLC*, 127 AD3d 450, 450 [1st Dept 2015] ["(t)he court correctly found that the claimed oral agreements are not as a matter of law unenforceable for indefiniteness, since there may exist an objective method for supplying the missing terms needed to calculate the alleged compensation owed plaintiff"]; *Interoil LNG Holdings, Inc. v Merrill Lynch PNG LNG Corp.*, 60 AD3d 403, 404 [1st Dept 2009] ["(w)hile the price term in th(e) agreement is not definite on its face, we find defendant has made a sufficient showing that the term can be supplied from public price indices and industry practice"]; *Bernstein v 1995 Assoc.*, 185 AD2d 160, 162

[1st Dept 1992] [price term reference to "fair market value" sufficiently definite under New York law since it could be determined objectively]).* The fee is enforceable inasmuch as it may be ascertained from public price indices and industry practice, i.e., the Thomson Reuters surveys.

Where, as here, the record demonstrates that sophisticated parties intended to be bound by an agreement, the doctrine of definiteness should not be used to defeat the bargain of the parties (*see e.g. Abrams Realty Corp. v Elo*, 279 AD2d 261, 261 [1st Dept 2001], *lv denied* 96 NY2d 715 [2001] [agreement not rendered unenforceable because of its failure to specify the rate at which the plaintiff's commission would be computed "since it is clear that plaintiff did not agree to work without compensation and that the parties understood that plaintiff would be compensated at the prevailing, normal and accepted rates"]).

The parties' pre-litigation course of dealing is also consistent with an intent to be bound by the transaction fee provision. After defendant sent CashEdge the indication of interest on or about December 20, 2010, the parties began discussing plaintiff's transaction fee. Plaintiff sent fee runs to defendant, and the parties discussed the materials. At no time did defendant object to plaintiff's approach.

Accordingly, the order of the Supreme Court, New York County (Jeffrey K. Oing, J.), entered October 5, 2015, which denied defendant's motion for summary judgment dismissing the complaint, should be affirmed, without costs.

ACOSTA, J.P., RENWICK, KAPNICK and WEBBER, JJ., concur.

Order, Supreme Court, New York County, entered October 5, 2015, affirmed, without costs.

---

* In arguing to the contrary, defendant relies on two federal lower court decisions. *Benevento v RJR Nabisco, Inc.* (1993 WL 126424, 1993 US Dist LEXIS 6226 [SD NY Apr. 1, 1993, No. 89 Civ. 6266]) has never been cited, let alone relied on, by a New York court. *GEM Advisors, Inc. v Corporacion Sidenor, S.A.* (667 F Supp 2d 308 [SD NY 2009]) has been cited by us once on an unrelated point. These lower court decisions are of course not binding on this Court.